

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-31-2006

# Cty Concrete Corp v. Roxbury

Precedential or Non-Precedential: Precedential

Docket No. 05-1680

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Cty Concrete Corp v. Roxbury" (2006). *2006 Decisions.* Paper 1331.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1331

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 05-1680 and 05-1865

COUNTY CONCRETE CORPORATION;
J.C. SOIL & GRAVEL, LLC; JOHN C. CRIMI,
Appellants/Cross-Appellees

v.

TOWNSHIP OF ROXBURY, a municipal corporation
of the State of New Jersey; SANDY URGO;
JIM RILEE; MARSHALL GATES; CAROL SCHENECK;
RICHARD HERZOG; FRED HALL; PLANNING BOARD
OF THE TOWNSHIP OF ROXBURY; RICHARD ZOSCHAK;
JOHN CIARAMELLA; BARBARA DAWSON; ROBERT
BADINI; LAWRENCE SWEENEY; LISA VOYCE; RAY
SCANLON; PATRICIA DAVENPORT; P. SCOTT MEYER;
RUSSELL STERN; THOMAS J. BOLODSKY; MAYOR AND
COUNCIL OF THE TOWNSHIP OF ROXBURY

Township of Roxbury; Sandy Urgo; Jim Rilee;
Marshall Gates; Carol Scheneck; Fred Hall;
Planning Board of the Township of Roxbury;
Richard Zoschak; John Ciaramella; Barbara Dawson;
Robert Badini; Lawrence Sweeney; Lisa Voyce;
Ray Scanlon; Patricia Davenport; P. Scott Meyer;
Russell Stern; Mayor and Council of the
Township of Roxbury,
Appellees/Cross-Appellants

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
D.C. Civil 03-cv-01445
District Judge: The Honorable Dennis M. Cavanaugh

Argued January 17, 2006

———————

Before: BARRY, AMBRO and ALDISERT, <u>Circuit Judges</u>

———————

(Opinion Filed: March 31, 2006)

———————

Ernest W. Schoellkopff, Esq. (ARGUED)
Connell Foley
85 Livingston Avenue
Roseland, NJ 07068

<u>Counsel for Appellants/Cross-Appellees</u>


Richard P. Cushing, Esq. (ARGUED)
Gebhardt & Kiefer
1318 Route 31 North
P.O. Box 4001
Clinton, NJ 08809
          -AND-
Anthony M. Bucco, Esq.
Johnson, Murphy, Hubner, McKeon
 Wubbenhorst & Appelt
51 Route 23 South
P.O. Box 70
Riverdale, NJ    07457

<u>Counsel for Appellees/Cross-Appellants Township of Roxbury,
et al.</u>

Peter A. Piro, Esq. (ARGUED)
Hack, Piro, O'Day, Merklinger,
 Wallace & McKenna
30 Columbia Turnpike
P.O. Box 941
Florham Park, NJ 07932

Counsel for Appellee Thomas J. Bodolsky

_____

OPINION OF THE COURT

_____


BARRY, Circuit Judge

For twelve years, County Concrete Corp., JCS&G, and John C. Crimi (collectively "appellants" or "County Concrete"), and the Township of Roxbury, its Planning Board, Town Council, and various individuals (collectively "appellees"), have been locked in a dispute over a 1994 application for subdivision and site plan approval for purposes of extending appellants' sand and gravel removal operations, and the Township's adoption, in 2001, of a Zoning Ordinance (the "Ordinance") which effectively prevented just that. In April, 2003, appellants filed a seven-count complaint charging appellees with (1) violations of substantive due process ("SDP") under 42 U.S.C. § 1983; (2) violations of the equal protection clause ("EPC") under § 1983; (3) a regulatory taking/inverse condemnation in violation of the Fifth and Fourteenth Amendments; (4) tortious interference with contractual rights and prospective economic advantage; (5) defamation; (6) breach of the implied covenant of good faith and fair dealing; and (7) civil conspiracy to deprive appellants of their aforementioned rights. The District Court dismissed most of the counts for failure to state a claim under F.R.Civ.P. 12(b)(6) and granted summary judgment on the remaining counts. We have jurisdiction over the appeal and cross-appeal under 28 U.S.C. § 1291, and exercise plenary review over the dismissals under Rule 12(b)(6) and the grants of summary

3

judgment. *See Gallas v. Supreme Court of Pa.,* 211 F.3d 760, 768 (3d Cir. 2000) (Rule 12(b)(6)); *Pa. Prot. & Advocacy, Inc. v. Pa. Dep't of Pub. Welfare*, 402 F.3d 374, 379 (3d Cir. 2005) (Rule 56). We will reverse in part and affirm in part and remand for further proceedings.

## I. <u>Discussion</u>

Appellants attack the Ordinance and appellees' conduct preceding the passing of that Ordinance with four federal claims: (1) a facial Fifth Amendment Just Compensation Takings claim, (2) a facial SDP claim against the Ordinance, (3) a SDP claim against appellees' pre-Ordinance conduct, and (4) a facial EPC claim against the Ordinance. The District Court only evaluated the ripeness of the Just Compensation Takings claim. Neither the parties nor the District Court questioned whether the SDP or EPC claims were ripe. We asked the parties to address this issue at oral argument because "considerations of ripeness are sufficiently important that we are required to raise the issue *sua sponte* even though the parties do not." *Felmeister v. Office of Attorney Ethics*, 856 F.2d 529, 535 (3d Cir. 1988).

## A. <u>Ripeness</u>

"The ripeness doctrine serves 'to determine whether a party has brought an action prematurely and counsels abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine.'" *Khodara Envtl., Inc. v. Blakey*, 376 F.3d 187, 196 (3d Cir. 2004) (quoting *Peachlum v. City of York*, 333 F.3d 429, 433 (3d Cir. 2003)). In *Williamson County Regional Planning Com. v. Hamilton Bank*, 473 U.S. 172, 186, 194-95 (1985), the Supreme Court held that an as-applied Fifth Amendment Just Compensation Takings claim against a municipality's enforcement of a zoning ordinance is not ripe until (1) "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue" (the "finality rule"), and (2) the plaintiff has unsuccessfully exhausted the state's procedures

4

for seeking "just compensation," so long as the procedures provided by the state were adequate.

## 1. *Williamson* **Prong One: The Finality Rule**

We have said that *Williamson*'s finality rule bars not only as-applied Just Compensation Takings claims, but also as-applied substantive due process and equal protection "claims by property owners or tenants who have challenged the denial of a permit by an initial decision-maker but failed to take advantage of available, subsequent procedures." *Lauderbaugh v. Hopewell Twp.*, 319 F.3d 568, 574 (3d Cir. 2003); *see also Taylor Inv., Ltd. v. Upper Darby Twp.*, 983 F.2d 1285, 1292, 1295 (3d Cir. 1993) (barring plaintiff's as-applied SDP and EPC claims against municipal land use decision as unripe). Only once a "decision maker has arrived at a definitive position on the issue" has a property owner been inflicted with "an actual, concrete injury." *Williamson*, 473 U.S. at 192. This rule does not apply, however, to *facial* attacks on a zoning ordinance, i.e., a claim that the mere enactment of a regulation either constitutes a taking without just compensation, or a substantive violation of due process or equal protection. *See, e.g.*, *Taylor Inv.*, 983 F.3d at 1294 n.15 (final decision not necessary for facial SDP and EPC claims); *Sinclair Oil Corp. v. County of Santa Barbara*, 96 F.3d 401, 406 (9th Cir. 1996) (final decision not necessary for facial Takings claims). A "final decision" is not necessary in that context because "when a landowner makes a facial challenge, he or she argues that *any* application of the regulation is unconstitutional; for an as-applied challenge, the landowner is only attacking the decision that applied the regulation to his or her property, not the regulation in general." *Eide v. Sarasota County*, 908 F.2d 716, 724 n.14 (11th Cir. 1990). We will apply the finality rule to each of appellants' constitutional claims in turn.

### a. Fifth Amendment Just Compensation Takings Claim

The Fifth Amendment, made applicable to the states by the Fourteenth Amendment, proscribes the taking of private

property for public use without just compensation. U.S. Const. amend. V, XIV; *Cowell v. Palmer Twp.*, 263 F.3d 286, 290 (3d Cir. 2001). Count Three of the complaint alleges that "the Ordinance and other actions of the defendants" regulated appellants' property "into a state of economic inutility" without just compensation in violation of the Fifth and Fourteenth Amendments. The District Court dismissed this claim on ripeness grounds because appellants failed to comply with both prongs of the *Williamson* ripeness test.

Appellants correctly argue that the finality rule only applies to as-applied Takings claims, and that they only challenge the Ordinance on its face. In *Williamson*, the plaintiff landowner alleged that a local planning commission's rejection of its development plat under local regulations was a Fifth Amendment Taking without just compensation because the decision denied the plaintiff all economically viable uses of its property. 473 U.S. at 177-82, 185. In contrast here, appellants do not challenge any particular decision of the Township or Planning Board applying the Ordinance to their property; instead, they allege that the mere enactment of the Ordinance has denied them all economically viable use of their property, i.e., a facial attack on the Ordinance. Thus, their facial Fifth Amendment Just Compensation Takings claim need not comply with the finality rule. *See Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 736 & 736 n.10 (1997) ("[F]acial challenges to regulation are generally ripe the moment the challenged regulation or ordinance is passed, but face an uphill battle, since it is difficult to demonstrate that mere enactment of a piece of legislation deprived [the owner] of economically viable use of [his] property." (internal citations and quotations omitted)).

The complaint also alleges that appellees' "other actions," in addition to the passage of the Ordinance, violated the Takings Clause. The District Court only addressed the Takings allegations with regard to a facial attack on the Ordinance, and this has not been challenged by appellants. Any argument they might make at this point has been waived.

6

b.  Substantive Due Process Claims

The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property without due process of law."  U.S. Const. amend. XIV.  "To prevail on a substantive due process claim, a plaintiff must demonstrate that an arbitrary and capricious act deprived them of a protected property interest."  *Taylor Inv*., 983 F.2d at 1292.  Although the District Court only recognized one SDP claim, we read the complaint as alleging two: the first addressed to the face of the Ordinance, and the second addressed to appellees' allegedly obstructive conduct during the time preceding the Ordinance's enactment.

i.  *SDP Claim as to the Ordinance*

In *Taylor Investment*, we held that *Williamson*'s finality rule applies to due process and equal protection challenges to the application of a land-use ordinance.  983 F.2d at 1292.  In that case, the plaintiff landowner brought as-applied SDP and EPC challenges against a township and its officials after a township zoning officer revoked a tenant's use permit for allegedly supplying false or misleading information in his permit application.  The plaintiff's claims were not ripe under the finality rule, we held, because plaintiff failed to appeal the zoning officer's decision to the zoning hearing board, which had the exclusive authority to render a final adjudication under the terms of the Pennsylvania Municipal Planning Code.  Only a decision by the board could represent a final revocation of the plaintiff's permit and until then the "impact of the zoning ordinances on plaintiff's property" would not be clear.  *Id.* at 1290.

Appellees claim that appellants were similarly required to seek a variance under N.J. Stat. Ann. § 40:55D-70d for their non-conforming use before their SDP and EPC claims would be ripe under *Taylor Investment*.  Just as with their Just Compensation Takings claim, however, appellants attack the Ordinance facially, i.e., they allege that, in all of its possible applications the Ordinance "lack[s] any legitimate reason and

7

[is] arbitrary, capricious, [and] not rationally related to any legitimate government interest." (App. 72.) We stated in *Taylor Investment* that *Williamson*'s finality rule only applies to as-applied challenges, such as the one asserted in that case, and not to facial due process claims. 983 F.2d at 1294 n.15. Other courts have also held that seeking a variance (i.e., complying with *Williamson*'s finality test) is not a prerequisite to a plaintiff's claim that the enactment of a zoning ordinance, in and of itself, violates the Due Process Clause. *See, e.g.*, *Pearson v. Grand Blanc*, 961 F.2d 1211, 1215 (6th Cir. 1992); *Executive 100, Inc. v. Martin County*, 922 F.2d 1536, 1541 (11th Cir. 1991); *So. Pacific Transp. Co. v. Los Angeles*, 922 F.2d 498, 507 (9th Cir. 1990); *Eide v. Sarasota Cty.*, 908 F.2d 716, 724 n.14 (11th Cir. 1990); *Smithfield Concerned Citizens v. Town of Smithfield*, 907 F.2d 239, 242 (1st Cir. 1990).

Appellants seize upon *Taylor Investment*'s as-applied/facial-challenge distinction, and argue that their attack on the Ordinance is a facial one only and that we should hold that a facial substantive due process challenge to a zoning ordinance – asserted on the theory that the law as a whole is arbitrary, capricious and unreasonable – is ripe even if the plaintiff did not seek a variance from the zoning ordinance. We so hold.

### ii. *SDP Claim as to Appellees' Conduct*

Appellants argue that the District Court gave an unduly narrow construction to their SDP and EPC claims by interpreting them only as attacks on the Ordinance, because they have also "alleged that the defendants abused the zoning process in the Township of Roxbury to deprive the plaintiffs of lawful use of their property, out of impermissible personal and political animus." (Appellants' Letter Br. 3.) Appellants claim that this "other conduct" does not have to comply with *Williamson*'s finality rule under our decision in *Blanche Road Corp. v. Bensalem Twp.*, 57 F.3d 253 (3d Cir. 1995).

In *Blanche Road*, we held that a plaintiff landowner need not comply with the finality rule where, instead of "appealing

from an adverse decision on a permit application," the plaintiff claimed that the defendant Township officers "deliberately and improperly interfered with the process by which the Township issued permits, in order to block or to delay the issuance of plaintiff's permits, and that defendants did so for reasons unrelated to the merits to the application for the permits." 57 F.3d at 267-68. It was asserted by the plaintiff that the Township "engaged in a campaign of harassment designed to force [it] to abandon its development of [an] industrial park." *Id*. at 258. We explained that this type of SDP claim is "substantively different" from "that presented in the ripeness cases" and that "[s]uch actions, if proven, are sufficient to establish a [SDP] violation, actionable under § 1983, even if the ultimate outcome of plaintiff's permit applications was favorable." *Id*. at 268. Thus, no further appeals were necessary in order to have a ripe, final determination for a federal court to review.

Appellants applied to the Planning Board in 1994 for approval to merge two tracts in order to extend their sand and gravel extraction operations. They allege in their complaint that appellees attempted to "impose unreasonable and unlawful restrictions" on their use of their property in violation of a 1993 agreement, to condition approval of their application on terms in violation of the 1993 agreement, to defeat their application by erroneously attributing environmental contamination from other sources to their extraction operations, and made false public accusations against appellants during the application process. Additionally, they claim that the 1999 Bodolsky investigation and his subsequent letter to the Township made false accusations about appellants' extraction operations in order to "restrict and impede soil extraction and related activity which previously had been agreed, approved, and/or requested by Roxbury." (App. 67-68.)

These allegations are similar to those asserted by the plaintiff in *Blanche Road*. As we held in that case, such claims are sufficient to establish a ripe SDP claim, regardless of the outcome of subsequent appeals for relief to municipal zoning boards. Thus, appellants' claim that appellees' course of

conduct, separate and apart from the enactment of the Ordinance, violated their SDP rights is ripe for federal adjudication.

c. Equal Protection Claim

The Fourteenth Amendment prohibits a state from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV. In Count Two, appellants allege that the enactment of the Ordinance was "discriminatory, arbitrary, capricious, unreasonable, malicious, improperly motivated and conscious-shocking, and sought to deprive the plaintiffs of the use of their property, whereas other proximate and/or similarly situated properties were not rezoned in the same manner," in violation of the Equal Protection Clause. (App. 73.)

These allegations constitute a facial challenge to the Ordinance, and, accordingly, appellants' EPC claim is ripe. The essence of this claim is that the mere enactment of the Ordinance violates the Equal Protection Clause because it arbitrarily treats appellants differently than other similarly situated property owners. This is not a case where a municipality has enacted a general ordinance and a homeowner objects to the application of the ordinance to his or her property. Here, the Township knew exactly how appellants intended to use their land and passed the Ordinance specifically tailored to prevent that use. *Williamson*'s finality rule "responds to the high degree of discretion characteristically possessed by land-use boards in softening the strictures of the general regulations they administer." *Suitum*, 520 U.S. at 738. It has no application where, as here, there is "no question . . . about how the 'regulations at issue [apply] to the particular land in question.'" *Id*. at 738-39 (quoting *Williamson*, 473 U.S. at 191); *see also Palazzolo v. Rhode Island*, 533 U.S. 606, 620 (2001) ("While a landowner must give a land-use authority an opportunity to exercise its discretion, once it becomes clear that the agency lacks the discretion to permit any development, or the permissible uses of the property are known to a reasonable degree of certainty, a takings claim is likely to have ripened."). It would be an exercise in futility to

require appellants to seek a variance from an ordinance specifically directed at their properties. Accordingly, their facial challenge is ripe. *See Hacienda Valley Mobile v. Morgan Hill*, 353 F.3d 651, 655 (9th Cir. 2003) ("Facial challenges are exempt from the first prong of the *Williamson* ripeness analysis because a facial challenge by its nature does not involve a decision applying the statute or regulation.").

### 2. *Williamson* Prong Two: Exhaustion of Just Compensation Procedures

The second prong of the *Williamson* ripeness test states that "if a State provides an adequate procedure for seeking just compensation," the plaintiff must have exhausted this procedure in order for his or her Takings claim to be ripe for federal adjudication. *Williamson*, 473 U.S. at 194-95. Of course, "there is no requirement that a plaintiff exhaust administrative remedies before bringing a § 1983 action." *Id.* at 192 (citing *Patsy v. Florida Board of Regents*, 457 U.S. 496 (1982)). Instead of being a true "exhaustion of state remedies" requirement, however, the second prong of *Williamson*'s ripeness test merely addresses a unique aspect of Just Compensation Takings claims. Because the Fifth Amendment bars not just the "taking" of property, but the taking of property "without just compensation," a plaintiff "cannot claim a violation of the Just Compensation Clause until" he or she has exhausted a state's "procedure for seeking just compensation." *Id*. at 194-95 & 194 n.13. Only then can a Takings claimant allege that he or she has actually been denied just compensation, and, thus, only then is his or her Takings claim ripe. *Id*. at 195. We, therefore, will apply the second prong of *William's* ripeness test to appellants' various constitutional claims.

#### a. Fifth Amendment Just Compensation Takings Claim

As stated above, the District Court erroneously found that appellants' Takings claim failed to satisfy the finality rule. It correctly held, however, at the time of the motion to dismiss, that the Takings claim was nevertheless unripe because appellants

failed to exhaust state just compensation procedures. (App. 16.) While the fact that appellants allege a *facial* Just Compensation Takings claim against the Ordinance may save them from the finality rule, it does not relieve them from the duty to seek just compensation from the state before claiming that their right to just compensation under the Fifth Amendment has been violated. This is true regardless of whether a property-owner claims that he was deprived of all of his property's economically viable uses by the mere enactment of a zoning ordinance, or by a municipality's application of a facially-neutral zoning ordinance to that land. *See Sinclair Oil Corp. v. County of Santa Barbara*, 96 F.3d 401, 405-06 (9th Cir. 1996).

Although the District Court correctly determined that the facial Just Compensation Takings claim failed to satisfy the second *Williamson* prong at the time of the motion to dismiss, the Supreme Court of New Jersey denied review of appellants' state court appeal while this appeal was pending before us. *See County Concrete Corp. v. Township of Roxbury*, 884 A.2d 1260 (N.J. Oct. 7, 2005). Accordingly, the second *Williamson* prong no longer prevents appellants from asserting that the mere enactment of the Ordinance deprived them of the economically viable use of their property, and, thus, we will reverse the District Court's conclusion that the claim was unripe.[1]

b. Substantive Due Process Claim and Equal Protection Claim

In contrast to a Just Compensation Takings Claim, the remedies for a successful substantive due process or equal protection claim as to the face of a zoning ordinance are the invalidation of the regulation and actual damages. The absence of "just compensation" is not part of a due process or equal protection injury. *See Williamson*, 473 U.S. at 197. Thus, given that the "exhaustion of just compensation procedures"

---

[1] We express no view on the merits of appellants' Just Compensation Takings claim, as the District Court did not reach the issue and must address it in the first instance upon remand.

requirement only exists due to the "special nature of the Just Compensation Clause," it is inapplicable to appellants' facial SDP and EPC claims. Because both claims satisfy the finality rule, they are ripe for adjudication. *Id*. at 195 n.14.

## B. **Merits of the Substantive Due Process Claims**

### 1. **SDP Claim as to the Ordinance**

The District Court dismissed appellants' SDP facial challenge to the Ordinance on the ground that "[s]electing a recognized use of land and setting lot sizes of three acres on the face of a zoning ordinance is rationally related to a legitimate state interest, and is not egregious governmental abuse or official conduct against liberty or property rights that shock the conscience." (App. 13.)

The facial challenge being ripe, we first reject appellees' contention, with which the District Court agreed, that under *United Artists Theater Circuit, Inc. v. Twp. Of Warrington, Pa.*, 316 F.3d 392, 400 (3d Cir. 2003), government action does not violate substantive due process when merely motivated by an "improper motive," as we had formerly held, but now must rise to the higher level of "shock[ing] the conscience," a standard, appellees allege, with "the same practical effect" as a "taking." (Appellees' Letter Br. 7.) But *United Artists* did not apply the "shocks the conscience" standard to *legislative* action; rather, we clearly held in *United Artists* that "*executive action* violates substantive due process only when it shocks the conscience." *United Artists*, 316 F.3d at 399-400 (emphasis added). There is a distinction in the standard of review for legislative and executive acts that allegedly violate substantive due process. As Judge, now Justice, Alito explained in *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 139 (3d Cir. 2000), "typically, a legislative act will withstand substantive due process challenge if the government 'identifies the legitimate state interest that the legislature could rationally conclude was served by the statute.'" *Id*. (citation omitted). On the other hand, non-legislative state action violates substantive due process if "arbitrary, irrational, or

13

tainted by improper motive," or if "so egregious that it 'shocks the conscience.'" *Id.* (citations omitted)

When a municipal body in New Jersey acts to "either recommend[] or vot[e] for a change in the permitted uses in a zoning district," the act is legislative in character. *See Timber Properties v. Chester*, 500 A.2d 757, 763 (N.J. Super. Ct. Law Div. 1984); *see also Bow & Arrow Manor, Inc. v. West Orange*, 307 A.2d 563, 567 (N.J. 1973) ("It is fundamental that zoning is a municipal legislative function."). "'[F]ederal judicial interference with a state zoning board's quasi-legislative decisions, like invalidation of legislation for 'irrationality' or 'arbitrariness,' is proper *only if the governmental body could have had no legitimate reason for its decision*.'" *Phillips v. Bd. of Keyport*, 107 F.3d 164, 186 (3d Cir. 1997) (Alito, J., concurring and dissenting) (quoting *Pace Resources, Inc., v. Shrewsbury Twp.*, 808 F.2d 1023, 1034 (3d Cir. 1987)) (emphasis added in *Pace*); *see also Nicholas*, 227 F.3d at 139. Thus, for appellants' facial substantive due process challenge to the Ordinance to be successful, they must "allege facts that would support a finding of arbitrary or irrational legislative action by the Township." *Pace*, 808 F.2d at 1035.

In *Pace*, we affirmed the dismissal of a landowner's SDP challenge to the facial validity of a zoning ordinance because the "complaint fail[ed] to make any factual allegations that indicate[d] irrationality," and merely alleged that the zoning change in question "did not conform to the spirit and general guidelines of the comprehensive plan which encouraged industrial development." *Id.* We explained that such an allegation only indicated that political compromise and difference of opinion were motivating the zoning ordinance. Things would have been different, we suggested, had the plaintiff "present[ed] a case involving actions aimed at this developer for reasons unrelated to land use planning." *Id.*

Appellants have alleged facts that indicate irrationality and arbitrariness, and "present a case involving actions aimed at [appellants] for reasons unrelated to land use planning." *See id.* The complaint charges appellees with attempting to impede

appellants' sand and gravel extraction operations on one tract, and their attempts to expand to another tract, through false accusations, verbal disparagement and the imposition of illegal conditions and restrictions on their business in violation a 1993 agreement. On the heels of this alleged animus, the Township enacted the Ordinance, which rezoned appellants' land from Industrial to either Rural Residential or Open Space. While the land in question is of an industrial nature and has been zoned for industrial uses for close to fifty years, the new designations only permit single-family detached dwellings and a minimum lot size of three acres. Allegedly, this action was taken knowing that it violated appellants' legal and contractual rights. There is nothing in the complaint that would indicate any possible motivation for the enactment of the Ordinance other than a desire to prevent appellants from continuing to operate and expand their extraction business. Such animus is not a legitimate reason for enacting a zoning ordinance, *see Brady v. Town of Colchester*, 863 F.2d 205, 216 (2d Cir. 1988), and is unrelated to land use planning. *See Pace*, 808 F.2d at 1035. Thus, appellants have alleged facts which, if true, state a claim that the Ordinance, on its face, violates substantive due process. While their claim may be ultimately unsuccessful if the Township is able to demonstrate a legitimate reason for the Ordinance, there was no basis for a Rule 12(b)(6) dismissal.

## 2. **SDP Claim as to Appellees' Conduct**

As we noted above, appellants argue that the District Court reduced Count One "to bald allegations of a 'substantive due process violation for enacting a zoning ordinance,'" but that "the[ir] complaint undeniably entails much more than this." We agreed with that characterization, and discussed *Blanche Road*, where the SDP claim was that the defendant Township officers "engaged in a campaign of harassment designed to force [it] to abandon its development of [an] industrial park." 57 F.3d at 258. In *Blanche Road*, we "reject[ed] defendants' argument that [the plaintiff] failed to assert a constitutional claim because it has no vested property right that could be subject to a due process violation," inasmuch as the plaintiff "had the right to be free from harassment in [its] land development efforts." *Id*. at

15

268 n.15. Appellants have leveled similar allegations of harassment and obstruction and have, therefore, stated a substantive due process claim.

## C. **Merits of the Equal Protection Claim**

The District Court dismissed appellants' Equal Protection challenge to the Ordinance, summarily holding that "Roxbury's changes to the zoning ordinance do not present a basis for an equal protection claim." (App. 15.) Appellants argue that the District Court erred because "[e]ven though the ordinance doesn't classify by race, alienage or national origin, it is unreasonable, arbitrary and bears no rational relationship to a permissible state objective." (Appellants' Br. 23.)

Unlike a substantive due process challenge, where the question is whether it was irrational for a Township to have passed a zoning law at all, in an equal protection challenge the question is whether "the Township has irrationally distinguished between similarly situated classes." *Rogin v. Bensalem Twp.*, 616 F.2d 680, 689 (3d Cir. 1980). Thus, the "first inquiry a court must make in an equal protection challenge to a zoning ordinance is to examine whether the complaining party is similarly situated to other uses that are either permitted as of right, or by special permit, in a certain zone." *Congregation Kol Ami v. Abington Twp.*, 309 F.3d 120, 137 (3d Cir. 2002). If "the entities are similarly situated, then the [Township] must justify its different treatment of the two," *id.*, by demonstrating that the ordinance is rationally related to a legitimate government purpose. *Rogin*, 616 F.2d at 688.

The complaint charges appellees with taking "discriminatory" actions, and with seeking "to deprive the plaintiffs of the use of their property, whereas other proximate and/or similarly situated properties were not rezoned in the manner of the plaintiffs' property; nor were they accorded the treatment suffered by the plaintiffs and complained of herein." (App. 73.) These conclusory allegations do not suggest what "similarly situated property" was not rezoned in the same manner, nor do they offer any facts demonstrating how those

16

properties were similarly situated. *See Ventura Mobilehome Cmtys. Owners Ass'n v. City of San Buenaventura*, 371 F.3d 1046, 1054-55 (9th Cir. 2004) (dismissing facial EPC claim against zoning ordinance, in part, because the plaintiff's "conclusory allegations" of being "singled out, from all property owners in Defendant City" did "not identif[y] other similarly situated property owners or alleged[] how they are treated differently."). To state a claim, the complaint must allege *facts* supporting a finding of irrational or arbitrary legislative action by the Township. *See Pace*, 808 F.2d at 1035. Without any facts, we have no way of determining whether the Ordinance discriminated against appellants' properties, and if so, whether there was a possible rational basis for that discrimination. *See, e.g.*, *Congregation Kol Ami*, 309 F.3d at 140-43 (analyzing whether country clubs, which were exempted from a zoning ordinance, are similarly situated to plaintiff's synagogue, which was denied an exemption). The complaint is similarly bereft of any indication of how appellees' "other conduct" violated appellants' equal protection rights. We will affirm the District Court's dismissal of Count Two. At least as currently pled, it does not state a claim.

## D. Legislative Immunity

In addition to dismissing appellants' SDP, EPC and Takings claims in Counts One, Two and Three for lack of ripeness and/or failure to state a claim, the District Court dismissed those claims against all seventeen individual defendants on the ground of absolute legislative immunity. It dismissed appellants' claim for tortious interference with contractual rights and prospective economic damage in Count Four on this ground as well as to all individual defendants except Bodolsky. The District Court simply concluded that the "2001 Ordinance was adopted by the Defendants following the Defendant planning board's preparation of a Master Plan . . . . Thus all of the Defendants were involved in the local legislative process in adoption of zoning ordinances [of] which Plaintiffs complain . . . ." (App. 11.) As for Bodolsky, the District Court wrongly "assume[d]" that he "is a member of the Township's legislative body . . . ." (App. 35.)

17

Members of local legislative bodies, such as municipal planning boards, are entitled to absolute legislative immunity for actions taken in a purely legislative capacity. *Acierno v. Cloutier*, 40 F.3d 597, 610 & 610 n.10 (3d Cir. 1994) (*en banc*). To determine whether actions are "legislative" for immunity purposes, we have set out a two-part test: "(1) the action must be 'substantively' legislative, which requires that it involve a policymaking or line-drawing decision; and (2) the action must be 'procedurally' legislative, which requires that it be undertaken through established legislative procedures." *Id*. at 610 (citation omitted).

As to the first prong of the test, we have explained that, when zoning officials are enacting or amending zoning legislation, their acts are substantively legislative, and when they are enforcing already existing zoning laws, their acts are administrative, executive, or ministerial. *Id*. at 611. Aiding this analysis should be an evaluation of how many people are affected by the official conduct. Acts affecting the entire community tend to be substantively legislative, while acts affecting only one or a small number of individuals implicate executive or administrative action. *Id.*

Appellants argue that the "rezoning aims solely and discriminatorily at the plaintiffs' property in the subject neighborhood." (Appellants' Br. 29.) In *Acierno*, we held that where a county council enacted an ordinance rezoning the plaintiffs' property pursuant to legislative powers delegated under state law, and where that rezoning was performed via the ordinance procedure, the action was substantively legislative, even where the rezoning was directed at one particular parcel of property. 40 F.3d at 612-13.

It is not clear from the face of the complaint that the Ordinance *only* affects appellants' property.[2] Appellants alleged

---

[2] Unlike *Acierno*, in which we reviewed the District Court's grant of summary judgment, the District Court here dismissed Counts One through Four on a Rule 12(b)(6) motion to dismiss,

that the Ordinance changed the zoning of their tracts of land, but did not claim that this was all that it did. This seems unlikely, since, according to the complaint, the Ordinance repealed and revised Roxbury Township's entire Land Development Ordinance. (App. 69, para. 54.) In any event, even if the Ordinance only affected appellants' tracts of land, the Township's action was the enactment of a zoning ordinance as opposed to the enforcement of an already existing zoning law and, thus, the action was substantively legislative.

Under the second prong of the test for determining whether an action is "legislative" in nature, the Ordinance was "procedurally legislative if it was undertaken through established legislative procedures." *Acierno*, 40 F.3d at 613. Appellants have not alleged that the Ordinance was enacted in a manner contrary to "statutory procedures specified for such action," *see id.*, either in their complaint or now on appeal.

Thus, under the test we announced in *Acierno*, the enactment of the Ordinance was a "legislative" act, which entitles those defendants who enacted it to absolute legislative immunity for the act. It surely does not entitle the individual defendants who were *not* involved in enacting the Ordinance to immunity, but the District Court made no finding as to who was and who was not involved, instead lumping all defendants together in some sort of amorphous legislative "process." This was simply not enough.

We will vacate the dismissals of Counts One, Two, Three, and Four on the ground of absolute legislative immunity and remand for a determination of which of the many individual defendants, if any, are entitled to legislative immunity. If there are to be dismissals on this ground, the District Court must also determine whether the dismissals are in the defendant's or

---

and, thus, our review is limited to the factual allegations in the complaint.

19

defendants' individual or official capacities.  *See Bass v. Atardi*, 868 F.2d 45 (3d Cir. 1989).[3]

Implicit in the foregoing is the fact that the individual defendants would not be immune for their conduct from the time of County Concrete's 1994 application for subdivision and site plan approval until the Ordinance was enacted in 2001.  In *Carver v. Foerster*, we stated that "the doctrine of absolute immunity, as it pertains to local legislators, does not shield executive officials from liability for a course of conduct taken prior to and independent of legislative action, even if those officials were simultaneously members of the local legislative body that ratified the conduct."  102 F.3d 96, 102 (3d Cir. 1996).  Additionally, "[a]n unconstitutional or illegal course of conduct by county government does not fall within the doctrine of absolute immunity merely because it is connected to or followed by a vote of a county board."  *Id*. at 101.  Thus, we found in *Carver* that a county commissioner was not absolutely immune in a § 1983 action for his alleged "harassment, threats, and retaliation" designed to persuade county department heads to fire the plaintiffs from their jobs even though those acts preceded his legislative act of voting as a member of the county salary board to ultimately eliminate plaintiffs' positions.  That the defendant was a member of the county salary board was not dispositive.  His pre-vote actions were executive or administrative in nature and, thus, he was not entitled to absolute immunity in an action for damages.  *Id.* at 100.

Appellants allege "specific efforts on the part of Bodolsky, Stern and individual members of the Roxbury Council and planning board, to harass the plaintiffs and frustrate their efforts to conduct and expand their sand and gravel extraction operations." (Appellants' Br. 28.)  These acts, which on a motion to dismiss must be accepted as true, are non-legislative

---

[3] The complaint, in this regard, is deficient in that it names the individual defendants without regard to whether they were being sued in their individual or official capacities.

acts, which do not entitle the individual defendants to legislative immunity.

## E. Tortious Interference and Civil Conspiracy Claims

Count Four alleges that the "defendants' actions as aforesaid constitute an intentional and malicious interference with plaintiffs' rights under the 1993 Developer's Agreement and with their prospective economic advantage." Count Seven alleges that appellees conspired to deprive appellants of their federal and state constitutional rights. The District Court granted appellees' motion for summary judgment on both Counts on the ground that appellants failed to serve a timely notice of claim under the New Jersey Tort Claims Act ("NJTCA"), N.J. Stat. Ann. § 59:8-8, before bringing these tort claims against public entities and public officials. To bring an action in tort against a "public entity or public employee" in New Jersey, the claimant must file a notice of claim with the entity within ninety days of the accrual of the claim or else be "forever barred" from asserting that cause of action. N.J. Stat. Ann. § 59:8-3 and -8; *Moon v. Warren Haven Nursing Home*, 867 A.2d 1174, 1176 (N.J. 2005).

The District Court found that appellants failed to file a notice of claim with any of the defendants, and appellants do not argue to the contrary. They argue, instead, that they substantially complied with the NJTCA by filing their complaint against the Township in state court on May 24, 2001, "well within the ninety-day notice period of [the NJTCA]." (Appellants' Br. 37.)

The NJTCA requires that a notice of claim include the "date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted," a "general description of the injury, damage or loss incurred," the "name or names of the public entity, employee or employees causing the injury," and the amount of damages claimed. N.J. Stat. Ann. § 59:8-4. Applying this requirement, the Supreme Court of New Jersey, in *Wunschel v. Jersey City*, held that a would-be claimant had not substantially complied with the notice of claim requirement by filing a workers' compensation petition because

21

the petition failed to give notice of an intention to sue the public entity defendant for the particular tort of wrongful death. 477 A.2d 329, 338 (N.J. 1994).

Appellants' state court complaint was only filed against the Township of Roxbury, while here they seek to bring tort claims against all or virtually all of the appellees, including Stern and Bodolsky. Additionally, the state court complaint makes no mention of the possibility of a tortious interference with contract claim or a civil conspiracy claim. Thus, that complaint did not substantially comply with the requirements of the NJTCA for the tortious interference and civil conspiracy claims brought here.

Next, appellants claim that to the extent their civil conspiracy claim is predicated on federal and state constitutional violations, the NJTCA does not apply. It is true that the NJTCA's notice requirements do not apply to federal claims, including § 1983 actions, *Fuchilla v. Layman*, 537 A.2d 652, 658 (N.J. 1988), or to state constitutional torts, *see Garlanger v. Verbeke*, 223 F. Supp. 2d 596, 603-04 (D.N.J. 2002). Appellants, however, point to no authority establishing that the NJTCA does not apply to a state law civil conspiracy claim. "A civil action for conspiracy is essentially a tort action." *Farris v. County of Camden*, 61 F. Supp. 2d 307, 330 (D.N.J. 1999) (citation omitted). "Unlike a claim under 42 U.S.C. § 1985 . . . a conspiracy is not actually an element of a § 1983 claim. It is recognized, however, that civil conspiracy is a vehicle by which § 1983 liability may be imputed to those who have not actually performed the act denying constitutional rights." *PBA Local No. 38 v. Woodbridge Police Dep't*, 832 F. Supp. 808, 832 n.23 (D.N.J. 1993) (citing *Pfanstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990)). This does not mean, however, that a state tort law civil conspiracy claim is converted into a federal claim or a state constitutional tort merely because it is predicated upon violations of the federal and state constitutions. The NJTCA does not apply to federal and state constitutional claims because a state statute may not abrogate an individual's constitutional rights. *Greenway Dev. Co. v. Borough of Paramus*, 750 A.2d 764, 770 (N.J. 2000). Applying the NJTCA to a civil conspiracy claim will only hinder that state tort claim; it will not add

another hurdle for bringing a distinct § 1983 or state constitutional claim because a conspiracy is not an element of such claims. Thus, we hold that appellants were not exempt from the NJTCA notice requirements for their civil conspiracy claim in Count Seven.

Appellants argue, finally, that even if they failed to comply, substantially or otherwise, with the NJTCA's notice of claim requirement, at least as to Stern and Bodolsky they were not required to comply. They claim that Stern and Bodolsky are not public employees under the NJTCA, but are independent contractors. *See* N.J. Stat. Ann. §§ 59:1-3 and 8-3. As parties moving for summary judgment, Stern and Bodolsky had the initial burden to "demonstrate that the evidence creates no genuine issue of material fact" as to their status as public employees protected by the NJTCA notice provisions. *See Skerski v. Time Warner Cable Co.*, 257 F.3d 273, 278 (3d Cir. 2001).

Stern and Bodolsky argue that their status as public employees of the Township was affirmatively established by the factual admissions in appellants' complaint. The complaint states that "at all relevant times [Stern] acted as the Roxbury Township Planner and/*or consultant* to Roxbury" and Bodolsky "acted as the Roxbury Township Engineer and/*or consultant* to Roxbury." (App. 63 (emphases added).) "To be binding, judicial admissions must be unequivocal." *Glick v. White Motor Co.*, 458 F2d 1287, 1291 (3d Cir. 1972). The complaint equivocates as to whether Stern and Bodolsky were employed by the Township or whether they were only "consultants." Because it is not clear that a consultant is a "public employee" of the Township for purposes of the NJTCA, the allegations of the complaint are not judicial admissions such that Stern and Bodolsky would be relieved of their burden of "demonstrat[ing] that the evidence creates no genuine issue of material fact." *See Skerski*, 257 F.3d at 278.

Stern points to no evidence establishing the status of his relationship with the Township, and the District Court did not address the issue. (*See* App. 16-18.) Because Stern, as the

moving party, failed to "demonstrate that the evidence creates no issue of material fact" regarding whether he is a "public employee" for whom notice under the NJTCA is required, appellants met their burden of demonstrating a genuine issue of material fact for trial merely by pointing out his failure. Thus, we will reverse the District Court's grant of summary judgment in Stern's favor.

Bodolsky, on the other hand, submitted a declaration to the District Court on August 19, 2004 with his motion for summary judgment stating:

> I acted in the capacity of interim Township Engineer for the Township of Roxbury from to [sic] July 6 to December 29, 1999. I have served as Planning Board Engineer since 1993.
>
> During my tenure as Township Engineer and Planning Board Engineer, I was requested to prepare reports and render opinions relevant to this case. The Township and Planning Board would have considered and relied upon these products in taking action in this matter.

(App. 246.)

Bodolsky's claim that he is, or was, the Township and Planning Board Engineer is essentially the equivalent of an allegation that he is a "public employee" under the NJTCA. In *Borough of Dunellen v. F. Montecalvo Contracting*, 640 A.2d 1185 (N.J. Super. Ct. App. Div. 1994), the Superior Court of New Jersey, Appellate Division, strongly implied that a municipal engineer is a public employee and not an independent contractor. In *Borough of Dunellen*, the issue was whether a municipality had to provide a defense and indemnification for its borough engineer, Stetler, for claims asserted against Stetler by a third party. *Id.* at 1186. The municipality conceded "that it would be obliged to pay Stetler's attorneys fees and expenses had they been

24

incurred in defense of claims arising out of its services as the borough engineer," because N.J. Stat. Ann. § 59:10-4 requires it to pay such expenses for "public employees." *Id*. Therefore, the municipality argued "that Stetler was acting as an independent contractor, not as the borough engineer, with respect to the" third party's claims. *Id*. This suggests that "independent contractor" and "borough engineer" are mutually exclusive. Indeed, under New Jersey law, a "borough engineer" appears to be, by definition, a public employee. New Jersey Statutes Annotated § 40A:9-140, cited in *Dunellen*, requires New Jersey municipalities to appoint a "municipal engineer," and to pay him on "an annual salary or fixed fee basis or at an hourly rate." The municipality appointed Stetler pursuant to this law, and because it failed to demonstrate that Stetler was ever acting as an independent contractor (i.e., *not* as the municipal engineer), the court ordered it to provide him a defense and indemnification as a public employee under N.J. Stat. Ann. § 59:10-4. *Id*. at 1186-89.

Thus, because under New Jersey law a municipal engineer is a public employee, and Bodolsky alleges that he was the Township Engineer and/or Planning Board Engineer during all relevant times, he has met his burden to " demonstrate that the evidence creates no genuine issue of material fact." *See Skerski*, 257 F.3d at 278. The burden then shifted to appellants, the nonmoving parties, to identify, by affidavits or otherwise, specific facts showing a genuine issue for trial. *Lexington Ins. Co. v. W. Pa. Hosp*., 423 F.3d 318, 322 (3d Cir. 2005). Appellants failed to meet that burden. They have not explained why Bodolsky is an independent contractor and argue only that "[t]here was nothing to show that Bodolsky did not act as an independent contractor." (Appellants' Br. 35.) Thus, we will affirm the District Court's grant of summary judgment to Bodolsky on Counts Four and Seven.

25

## F. Cross-Appeal

Appellees, except Bodolsky, cross-appeal the District Court's September 14, 2004 Amended Order to the extent it dismissed the SDP and EPC claims *without* prejudice. Because we are reversing the dismissal of those claims, we need not reach the issue of whether the dismissals should have been with or without prejudice, and will dismiss the cross-appeal.[4]

## G. Supplemental Claim

The federal claims having been dismissed, the District Court dismissed appellants' Count Six claim for breach of the implied covenant of good faith and fair dealing for lack of supplemental jurisdiction under 42 U.S.C. § 1367(c). Because certain of the federal claims were improperly dismissed and that, therefore, the District Court retains jurisdiction over those claims, we will vacate the dismissal of Count Six and remand Count Six for consideration by the District Court.

## II. Conclusion

In summary, the facial Fifth Amendment Just Compensation Claim alleged in Count Three is ripe for federal adjudication, and the District Court's dismissal on this ground will be reversed. We reserve judgment on whether a claim upon which relief can be granted has been stated. The facial SDP and EPC challenges to the Ordinance and the SDP challenge to appellees' obstructive course of conduct prior to the enactment of the Ordinance are ripe for review. The complaint states a facial SDP claim upon which relief can be granted as to the Ordinance, and a SDP claim as to appellees'

---

[4] Similarly, given our extensive discussion of all of the claims and our disposition thereof, we need not address appellants' contentions addressed to the September 14th order.

26

obstructive course of conduct, and the order of the District Court dismissing those claims on this ground will be reversed. The complaint fails to state an EPC claim, and the order of the District Court dismissing on this ground will be affirmed. To the extent that the District Court dismissed the SDP, EPC, Takings and Tortious Interference claims (Counts One through Four) against the individual defendants on the ground of absolute legislative immunity, the order of the District Court will be vacated, and we will remand for findings consistent with this opinion. To the extent the District Court accorded the individual defendants legislative immunity as to appellants' SDP claim attacking defendants' pre-Ordinance conduct under *Blanche Road*, the order of the District Court will be reversed. The order of the District Court granting summary judgment on Counts Four and Seven will be affirmed as to all appellees, except Stern, with respect to whom the order will be reversed. The District Court's dismissal of Count Five on statute of limitations grounds will be affirmed,[5] and the order dismissing Count Six will be vacated. The cross-appeal will be dismissed.

In sum, the following claims survive: a substantive due process facial challenge to the Ordinance; a substantive due process challenge to appellees' obstructive course of conduct leading up to the enactment of the Ordinance; a Fifth Amendment Just Compensation Takings challenge to the face of the Ordinance; breach of the implied covenant of good faith and fair dealing; and the tortious interference and civil conspiracy claims, but only against Stern.

---

[5] Appellants have not argued that the dismissal on Count Five should be reversed.